UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ZHANGZHOU OCEAN RICH
FOODSTUFFS CO. LTD.,

    Plaintiff,

v.                                                       Case No: 8:14-cv-1179-T-36TGW

NEWPORT INTERNATIONAL OF
TIERRA VERDE, INC. and DRACO
FOODS, INC.,

    Defendants.
_____/

## **O R D E R**

This matter comes before the Court on the Defendants' Motion to Dismiss (Doc. 14), and Plaintiff's Response thereto (Doc. 18). In the motion, Defendants state that all counts of the Complaint should be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. The Court, having considered the motion and being fully advised in the premises, will deny Defendants' Motion to Dismiss.

## *I.*     *PLAINTIFF'S FACTUAL ALEGATIONS[1]*

The relationship between the parties began as a result of the shipment of crab cakes sent by Plaintiff, Zhangzhou Ocean Rich Foodstuffs Co. Ltd. ("Ocean Rich"), to a non-party, Crab Source, on or about August 1, 2012, pursuant to a Sales Agreement with Crab Source. Doc. 1 at ¶ 8. When Ocean Rich did not receive timely payment from Crab Source, inquiry was made via email and Kevin Pearce, Managing Partner of Crab Source, informed Ocean Rich via e-mail that

---

[1] The facts are presented as alleged by Plaintiff because "[w]hen considering a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff." *Sallah ex rel. MRT LLC v. Worldwide Clearing LLC,* 860 F. Supp. 2d 1329, 1333 (S.D. Fla. 2011) *citing Pielage v. McConnell,* 516 F. 3d 1282, 1284 (11th Cir. 2008).

Crab Source was in the middle of a merger with Defendant, Newport International Of Tierra Verde, Inc. ("Newport"), and that the merger was the cause for delay in payment. *Id.* at ¶¶ 9-10.

Crab Source's representation was confirmed on October 26, 2012, when Jack McGeough of Newport, wrote to Alan Iao, Vice President of Ocean Rich, indicating that Ocean Rich would be paid shortly after the merger, which would happen between November 23, 2012, and December 7, 2012. *Id.* at ¶ 11. McGeough later advised Ocean Rich that Newport could not make any payments until the merger was finalized. *Id.* at ¶ 13.

Despite non-payment, Crab Source and Anjan Tharakan, President of Newport, made inquiries to Iao of Plaintiff, Ocean Rich, about a possible second shipment of crab cakes. *Id.* at ¶ 15. On December 27, 2012, Tharakan emailed Iao stating that payment would be made within the next five (5) business days, and requested that he create a new invoice to Defendant Draco Foods, Inc. ("Draco"), as it would be the entity making payment on the outstanding invoice on Crab Source's behalf. *Id. at* ¶ 18. Ocean Rich provided a revised invoice on that same day. *Id.* at ¶ 19

On January 3, 2013, Tharakan emailed Iao stating that in order to make payment by that Friday he would need Ocean Rich to "change the commercial invoice and documents once more." *Id.* at ¶ 20. Tharakan specified that the invoice and documents needed to be changed to reflect Newport as the payer. *Id.* at ¶ 21. Iao provided the updated invoice the same day, and also provided bank account information for a wire transfer. *Id.* at ¶ 22.

Iao followed up on January 8, 2013, as the invoice still had not been paid. *Id.* at ¶ 23. On January 10, 2013, Tharakan e-mailed Iao to check the bank account to confirm Ocean Rich's receipt of a wire transfer. *Id.* at ¶ 24. On January 22, 2013, Pearce of Crab Source emailed Iao to request that the second container be shipped as soon as possible. *Id.* at ¶ 25. On January 28, 2012, Ocean Rich finally received payment via wire transfer for the first container. *Id.* at ¶ 26.

2

With regard to the second container of crab cakes, which is at issue in this case, Frank Chow, of Draco, requested that it be transported by a shipping company chosen by Draco, with Crab Source as consignee. *Id.* at ¶ 27. On February 16, 2013, Iao wrote to Crab Source and Draco stating that the shipping date would be February 25, 2013, and asking for payment by February 20, 2013, in order to ship the container on that date. *Id.* at ¶ 28. On February 17, 2013, Chow wrote to Iao to inform him that someone named Li (who was presumably associated with Draco) would be taking care of payment and that Ocean Rich would be receiving the export tax credit. *Id.* at ¶ 29.

On February 19, 2013, following a variety of issues created by the method in which Crab Source had requested the shipment be handled, Iao requested that Plaintiff, Ocean Rich, be allowed to ship the second container itself. *Id.* at ¶ 30. Crab Source, on behalf of Newport, agreed to this arrangement, provided that it was given a 90 to 120 day payment term for that container. *Id.* Ocean Rich agreed to the payment term, and caused the container to be shipped in March 2013. *Id.* at ¶ 31.

On May 7, 2013, Crab Source informed Ocean Rich that it was working with Newport and Draco, and "they are now handling all of our inventory." *Id.* at ¶ 32. On May 14, 2013, Crab Source informed Ocean Rich that Newport had requested a transfer of inventory and a revised invoice sent to Newport and Draco, with the invoice in Draco's name. *Id.* at ¶ 33. By the end of May, with the situation still unresolved, Ocean Rich, reached out to the facility storing the inventory, and was informed that there was nothing under the Crab Source account, but there were 2,537 cases of crab cakes in Draco's account. *Id.* at ¶ 35.

On June 3, 2013, Iao of Ocean Rich was told by Pearce at Crab Source that the invoice had gone to Newport and Draco. *Id.* at ¶ 36. Pearce further explained that Newport and Draco owned

the product and that Crab Source was no longer in business. *Id.* at ¶ 36. Pearce informed Iao that he had no control over the product or the money coming from it and that Iao should work with Newport. *Id.* at ¶ 37. Newport and Draco, in turn, continue to deny responsibility for the invoice. *Id.* To date, Ocean Rich has not been paid for this second container of crab cakes. *Id.* at ¶ 38.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion labeled as a "factual allegation" in the complaint. *Id*. Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. (citation omitted).

## III.    DISCUSSION

### A. Count I: Breach of Contract

Defendants argue that Plaintiff has failed to allege the existence of a valid contract because there are no allegations that an offer was made or that an offer was accepted and there are no allegations regarding the essential terms of the contract. However, a valid contract need not be express, but can also arise "when the parties' assent is manifested through written or spoken words, or inferred in whole or in part from the parties' conduct." *See Baron v. Osman,* 39 So. 3d 449, 451

4

(Fla. 5th DCA 2010) (internal quotations omitted). This is a contract implied-in-fact, which requires an examination of the parties' conduct. Plaintiff has alleged, at the very least, oral agreements amongst the parties regarding the second shipment of crab cakes. These allegations are sufficient to state a claim for breach of an implied contract by Defendants.

### B. Count II: Fraudulent Inducement

To state a claim for fraudulent inducement a plaintiff must allege that: (1) the defendant made a false statement regarding a material fact; (2) the defendant knew that the statement was false when he made it or made the statement knowing he was without knowledge of its truth or falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment. *See Simon v. Celebration Co.,* 883 So. 2d 826, 832 (Fla. 5th DCA 2004). A claim for fraudulent inducement can arise from a promise of a future action made with no intention of performing, or with a positive intention not to perform, such a promise. *See Prieto v. Smook, Inc.,* 97 So. 3d 916, 917 (Fla. 4th DCA 2012).

Defendants argue that (1) there are no allegations of a false statement; (2) the allegations of fraud relate only to the first – not the second – shipment, and are not inducements to act; and (3) Plaintiff has failed to allege actions it took in reliance on the false statements. However, Plaintiff has alleged that Defendants' representatives repeatedly made empty promises to pay for the second shipment, thus inducing Plaintiff to send the second shipment. Plaintiff alleges sufficient facts for an inference to be drawn that Defendants had no intention of making the payment. Additionally, Plaintiff alleges that in reliance on Defendants' promise to pay, Plaintiff shipped the second container and has not received payment. These allegations are sufficient to state a plausible claim for relief.

## C. Count III: Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must plead the following elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *See Golden v. Woodward,* 15 So. 3d 664, 670 (Fla. 1st DCA 2009).

Defendants argue that the Complaint fails to allege that any benefit was conferred on Newport. This is incorrect. Plaintiff has alleged that the second container of crab cakes was physically in Defendant Draco's storage account as of May of 2013, but Defendant Newport, nonetheless benefitted by not paying for the shipment because it, in conjunction with Draco: (1) took over Crab Source's inventory; (2) "owned the product" and (3) had control over the product and any money coming from the sale of it. Doc. 1 at ¶¶ 32-37. Again, these allegations are sufficient to state a plausible claim for relief.

## D. Count IV: Florida Deceptive and Unfair Trade Practices Act

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") provides that an aggrieved party may initiate a civil action against a party who has engaged in "[u]nfair methods of competition, unconscionable acts or practices," and "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1321 (M.D. Fla. 2002); Fla. Stat. § 501.204(1).

Defendants' primary argument for dismissal of this claim – that FDUTPA does not provide a cause of action for a single incident – is based on old law. In 2003, the Florida Supreme Court held that "the FDUTPA applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single

6

transaction, or a single contract." *PNR, Inc. v. Beacon Prop. Mgmt.,* 842 So. 2d 773, 777 (Fla. 2003). Thus, Plaintiff is not required to plead a "habitual or customary" practice by Defendants. Furthermore, Plaintiff's allegations meet the specificity requirement of Federal Rule of Civil Procedure 9(b) because Plaintiff has identified the misrepresentations, who made them, when they were made, and how they were made. Likewise, Plaintiff has sufficiently alleged causation. Count IV of the Complaint is not subject to dismissal, as Plaintiff has alleged a plausible claim for relief.

### E.  Count V: Negligent Misrepresentation

A claim for negligent misrepresentation requires that: (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *See Simon,* 883 So. 2d at 832. Defendants' arguments for dismissing this claim mirror those made with regard to Count II-Fraudulent Inducement.  As discussed above, Plaintiff has sufficiently alleged that Defendants made representations about paying for the second shipment that may be proven to be actionable misrepresentations under the law. Plaintiff's claim for negligent misrepresentation states a plausible claim for relief.  Accordingly, it is hereby

**ORDERED**:

1. Defendants' Motion to Dismiss (Doc. 14) is DENIED; and

2. Defendants shall file an answer to the Complaint within fourteen (14) days of this Order.

**DONE AND ORDERED** in Tampa, Florida on October 10, 2014.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any